We do have our lighting system, which I think you all are familiar with. I'm not perfect on enforcing it, but I do see it as my job to enforce it, so I'll try to do that. So now I'll call the case of Christian Gherardi v. Citigroup. Good morning. Good morning, Your Honors. May it please the Court, my name is Ethan Brescher. I represent the appellant Christian Gherardi. This morning I'll be dividing my time with my co-counsel Jeffrey Crockett. I'll be addressing the retaliation contractual issues, and Mr. Crockett will be addressing some of the other issues involving the Agron and Liang cases that we have cited in our briefs. The issue on appeal is well-defined by the Supreme Court in the Sutter case, by this Court in the Wiregrass case, and the issue and the error made by the District Court here was in vacating an arbitration award when the Court's sole role as set forth in the Wiregrass case is for review in court to determine whether the arbitrator even arguably interpreted the party's contract, not whether he got its meaning right or wrong. But if in that case, Wiregrass, isn't it acceptable if the arbitrator exceeds their authority and modifies the plain language of the contract, isn't that allowed for the District Court then to reverse or amend the judgment? Well, the Wiregrass Court says that even if there's plain language and the result is contrary, the result of the arbitrators remain the same if there's evidence of the party's intent. In this case, however, it's different because the contract had two provisions, two conflicting provisions, the at-will employment language and the anti-retaliation language. And what Judge Ungaro did in the District Court, specifically at page 24, was to nullify the anti-retaliation language in the contract. She simply read it out of existence. What the arbitrators here did, what charged were doing and did what the parties asked them to do via their submission of the agreement, was to interpret the contract. And the contract in the handbook had two provisions that were in conflict with each other. And that's what they were... Doesn't the retaliation provision mean that if you file a claim, an arbitration, that there cannot be retaliation against you? There's an anti-retaliation provision. Correct, but you're still an at-will employee, that you can be fired for any cause. Well, this provides, this is the ambiguity here. What does the anti-retaliation language mean? It has some meaning. Contract, as the cases say, all provisions of a contract have to be given effect. And in this instance, the District Court gave the anti-retaliation provision no effect whatsoever. The arbitrators, and even if the court determined that it was an incorrect, illegally wrong, erroneous, grievously wrong decision, as the Supreme Court said in Sutter, that's not sufficient for the court to change the result of what the arbitrators did, if what they were taking were two contractual provisions, and there's no dispute that there were two contractual provisions here, and they tried to reconcile their meaning. What Citi has done, and they argued for the first time in their appeal brief, they didn't argue it in the arbitration, they didn't argue it in the District Court, and therefore they've waived the argument. What they've said was the anti-retaliation provision really wasn't a contractual provision, but was an internal policy, a non-binding provision. They made that argument in their appellate brief for the first time, recognizing that the law is so clear that if there are conflicting provisions, the arbitrators are simply doing their job of what's expected them to do. So what they've tried to do is create a carve-out and say, oh, that anti-retaliation language isn't contractual, it's an internal policy. What if Citi had intended for, assume that Citi did intend for that language to be non-binding and non-arbitrable, how could they have made that more clear within the contract? Well, they could have said what they've said in their appellate brief, that this is a non-binding internal policy, we will endeavor not to retaliate against employees who pursue our policies, or you have no rights to, we encourage employees to use this, but it's possible that something could happen, that you're always subject to being terminated no matter what. They put in language, as the drafters of the contract, included the anti-retaliation language, and therefore it has meaning. Therefore, what the arbitrators did, their job, which was to figure out what that language meant, as Justice Kavanaugh wrote in his first opinion for the Supreme Court in January 2019 in the Henry Schein case, going almost further, he said, quote, when the party's contract assigns a matter to arbitration, a court may not resolve the merits of the dispute, even if the court thinks the party's claim on the merits is frivolous. The Supreme Court has said that when a contractual issue is submitted to an arbitration panel for determination, that's it. That's what you bargained for. That's what Citi bargained for. Citi included the arbitration agreement in its handbook. Citi included the anti-retaliation language in its handbook. Citi agreed, via the submission agreements, to have this entire dispute resolved in arbitration, and the parties got exactly what they bargained for. Thank you. Thank you. Thank you. May it please the Court, Your Honors, the issue, as stated in Wiregrass, is whether, on the one hand, the arbitrators were arguably interpreting the contract, or on the other, were they substituting their own views of what's right and wrong, or modifying the party's contract. And as Wiregrass held, there's a strong presumption that the arbitrators were doing the former, which applies even if the contract is not facially ambiguous in the opinion of the Court, and that presumption is not rebutted by silence or lack of a stated explanation. In this case, Your Honor, if we look at the district court's order, both on the retaliation issue and on the Agron issue, the Court expressly says the arbitrators interpreted the contract, but wrongly in view of the district court. In other words, if the district court had this issue on cross motions for summary judgment, the district court would have ruled as the district court did. That's not allowed in the arbitration context because the interpretation of the contract is given to the arbitrators, who, as my co-counsel said, decided whether the contract either meant we cannot retaliate against you for using the dispute resolution process, or we can't retaliate against you by moving you from your corner office, but we can fire you, which was Citibank's argument. That was an interpretation issue. Let me go to the Agron case. The Agron and Leanne cases, these are FINRA arbitration cases, which hold that if there is an agreement, as in this case for FINRA arbitration, the contract has an implied term, an implied term as a matter of law, as a matter of federal common law, that the arbitrators have the power and duty to determine whether a termination is justified. This is federal law that the arbitrators were argued to and they followed. This court in the Rosenzweig case dealt with an unjust termination case, affirmed it in favor of a broker, notwithstanding the opposing counsel's argument is that there is no such claim. I understand Rosenzweig didn't directly address the issue before this court, but it's consistent with Agron and Leanne. Also, by the way, consistent is Citibank, which says their representative testified in the arbitration. We don't terminate without cause. So this is the common law in the arbitration industry. Now, the district court said, you know what, there's this dictum in the Bishop case from the Fourth Circuit, and I agree with that. I find that more persuasive. Again, that's no more than a legal error at worst. And the arbitrators were trying to interpret the contract, which federal cases have said, cases that have never been overruled in decades, that there is an implied term, that arbitrators have the inherent duty to determine whether or not there's just cause for termination. Can you remind me, is there a specific provision in this particular contract that gives the authority to the arbitrator to determine what is arbitrable and what's not arbitrable? Yes. And what's that provision? It's in what's called the EAP. It simply says the arbitrate... It's in the very last provision. The standard language. Standard language that the arbitrators determine what is arbitrable. Also, I want to take the... Because this issue was submitted to the arbitrators on the facts. Citibank said, we did not terminate in retaliation for exercising his dispute resolution rights, and our conduct was appropriate. Those were factual arguments made to the arbitrators submitted to them. I want to quote to you on this issue of, it's just a policy, it's not a contract, it doesn't mean anything. Citibank's argument to the arbitrators, this is DE 1716 at 44. In their closing argument to the arbitrators, was Citi expected to live up to the promises in the handbook? Of course it was. So, even though they say, but it's not technically a contract. Citibank told the arbitrators, this was very similar to the union rules. This was the way it was. Citibank promised its employees this dispute resolution procedure. They promised them there would not be reprisals against them for participating in it, and then they violated that as to Mr. Girardi. Also, we have to look at the record that Citibank made. There was a disciplinary warning. There was a formal disciplinary process. Mr. Girardi was challenging that disciplinary warning, and the arbitrator said in the hearing, and this is in our reply brief at 5, DE 179 at pages 70 and 71, this all depends on the final warning. Would you have filed an arbitration on that final warning to challenge it, Mr. Girardi, which you had the right to do? Yes, he would have. The arbitrator said, okay, we will look at whether that final warning was justified, as we are allowed to do under the Citibank policy, and if it wasn't, everything falls. We're the arbitrators. We will decide that issue. So again, this is simply not a case where the arbitrators were on some frolic and detour exercising their own views of right and wrong. We'll hear from you again on rebuttal. Thank you, Your Honor. Good morning. Good morning. Good morning, Your Honors. May it please the court and counsel, I'm Suzanne LeBrett. It is my pleasure and privilege to represent the Appali City Group in this appeal. The judgment should be affirmed. Judge Ingaro correctly concluded under Wiregrass that this award is based not on an arguable interpretation of the agreements, but on an improper modification to the documents. I want to first address where counsel left off with regard to the final warning that began as the foundation of the retaliation argument. The final warning itself embodies the principles of at-will employment that are expressed in the governing documents. It says explicitly, you are an at-will employee and your employment can be terminated anytime and for any reason. Does it really matter whether I agree with you or whether the other judges in this court agree with you or whether the district court agrees with you? Why isn't that something that the arbitrator decides as a legal matter, if you will? The Wiregrass inquiry, the first question is, is the governing document or the governing documents, the agreement pursuant to which the parties submitted and agreed to submit to arbitration, is it ambiguous? And if the answer to that is no, then the issue of the arbitrators interpreting the document is a non-starter. That's the analysis that Judge Ingaro engaged in. And we submit that there is, the retaliation clause does not create an ambiguity and I'd like to explain why. I have one condition precedent to that and that is, why isn't that one of the decisions that is also given to the arbitrator under the contract to determine whether that dispute over the at-will employment is even arbitrable in the first place? The arbitrators, and this comes from Oxford, Stolt-Nielsen, the fundamentals of our jurisprudence, are that the arbitrators have the authority that was delegated to them by the agreement. That's the promise of arbitration. And what these parties agreed could be arbitrated were employment disputes, right? But one thing that was excluded, and it was expressly excluded again and again and again, was whether Citibank could terminate Mr. Giordi on any day for any reason. That's what happened here and that's what the arbitrators awarded for. They didn't, he sued for his damages claim, the way he pled this and it's in his closing brief. The pleading, it's around between pages 44 and 48 of his closing brief to the arbitrators. He pled for 3.6 million in lost earnings. He pled that specifically as damages for defamation, which was a tort that wasn't, that would have been correctly submitted to the arbitrators. He, as sort of a footnote, included that as his breach of contract damages. And for his wrongful termination damages, he asked for the trailers and the deferred comp, which we don't challenge that award because it's tied to other agreements. But what was delegated to these arbitrators didn't include the ability to grant relief for a breach of a promise that was expressly disclaimed. We do not promise you that you will have any guarantee of employment and therefore narrow guarantee of the right to receive lost wages. That's our position on what, the arbitrators weren't empowered to make this award of these damages. We don't challenge that the arbitrators could change the U5 because the reason for the termination was incorrectly characterized. But what the arbitrators had that was delegated to them, and paragraph 19B of the arbitration agreement confirms this in addition to the outlaw language that is everywhere in these employment agreements. Paragraph 19B prescribes, it requires the arbitrators to only make an award per applicable law, can only award compensatory damages as they're authorized by applicable law. Applicable law, Florida, New York, whichever you want, doesn't authorize any damages for outlaw termination because neither state recognizes such a cause of action in the outlaw context. So by the same token, the arbitration clause really doesn't give any employee, in your view, any recourse. I mean, the arbitration clause really doesn't provide any opportunity for a fired employee because they're all at will. Well, it certainly does provide plenty of recourse for employees that are terminated for reasons prohibited by law. For example, if Mr. Garrardi alleged that he was fired on the basis of his gender or an age issue or some other protected ADA problem, he would have recourse. The employment agreement is clear on that. What it is equally clear on is that he has no recourse based on a promise of continued employment. That is not a promise that was made. It was expressly disclaimed. Why isn't that... It sounds like you may very well be right, but why isn't that an interpretation of the contract rather than a scope of the agreement in the first place? I would direct the court to the part of Wiregrass that says arbitrators' authority to interpret is not boundless. And one of the examples that Judge Carnes wrote about in Wiregrass was where an arbitrator grants a remedy that's not authorized by the agreement. There's a paragraph devoted to that. In Wiregrass. And this is exactly what happened here. The arbitrators exceed... And by the way, Judge Carnes couched that expressly as exceeding powers. Awarding a remedy that is not authorized by the contract is exceeding powers. A remedy for lost wages on a termination is explicitly not authorized by this contract because it says at will. So my argument on your question, Judge Grant, with regard to the arbitrator's ability to interpret is this is past that boundary that Judge Carnes identified in Wiregrass. I want to address one other point, and I'm not sure if this is an issue for the court or not, but counsel raised it. The issue of Citibank waiving is simply incorrect. The Citibank argued in its motion to vacate and in its opposition to the motion to confirm the issues concerning the retaliation agreement. Those are at docket entries 12 and 13, and the argument is right around page 18 in both of those. And I would direct the court for that proposition to note eight in the charter case that indicates it is entirely permissible to raise legal arguments challenging the ward at the time of the motion to vacate. Citi certainly argued during the arbitration that the anti-retaliation clause didn't affect the other promises and didn't render the agreement ambiguous. With regard to my last point, the Agron line of cases, the Federal Common Law of Securities Arbitration, those cases were treated as collective bargaining cases because they were being arbitrated under NASDAQ rules generally applicable at that time. Neither of the brokers in those cases had employment agreements that said that they were at will. And to imply, to allow the arbitrators to imply the rights that are ostensibly represented by those precedents would again be a violation of wire grasp because our agreement, unlike the ones featured in those, was not a collective bargaining agreement imposed by the rules of NASDAQ. It was an explicit at will employment agreement. And so to imply something that is not relevant to this circumstance would again, under wire grasp, have been in excess of the arbitrator's powers. You indicated that someone could, in response to Judge Martin's question, that someone could bring a wrongful termination case to the arbitrator, say if it was because of race or age or some other federally protected characteristic. Is that right? That is correct. So obviously those provisions interfere with the pure at will provision of the employment contract, right? I wouldn't say that they interfere respectfully. I think that they're harmonized with because they're couched as exceptions to the at will. What the agreement says is your employment can be terminated any time for no reason or any reason not prohibited by applicable law. And then applicable law is defined in the agreements as it's exemplified by listing the various statutory causes of action as examples of prohibited. So why couldn't, obviously the retaliation provision is not a matter of law, but why couldn't the retaliation provision also be read as one more narrow exception to the at will employment relationship that's otherwise expressed in the contract? For, as a starting point, context. Context is everything. And the context of the retaliation provision, which simply says retaliation is expressly prohibited, the context of it is that right before it, right after it, and all around it, these agreements say you are at will. And I would direct the court to the provisions of the statement of intent. And that is the guidepost. Let me ask you a question, because I know that the exceptions list all the different federal laws regarding the Civil Rights Act, ERISA, Fair Labor Standards Act. But in addition to that, it also says defamation or retaliation, whistleblowing, or any other claims arising under or related to the city group separation pay plan. Why is the use of the word retaliation after defamation? Why does that not include, then, a claim for retaliation? If Mr. Girardi had, and he did plead this, sought damages in tort for the retaliation, as opposed to for the wrongful termination as a contractual claim, and that's how he pled it, breach of contract and or wrongful termination and or. Separately, he pled defamation. To answer your question, there was only one thing that the arbitrators, at least for purposes of our conversation, there was only one thing these arbitrators expressly, that the parties promised, would not be, was excluded from, was wrongful termination, damages for lost earnings. That's what wrongful termination is. Retaliation, if there was a tort for that, perhaps he could have pled that claim, and he did. He pled a defamation claim based on the retaliation. Again, I would remind the court that his retaliation theory doesn't stack up against these documents because his whole theory was the final warning was not valid. It wasn't based on good facts. The final warning, and then he said he pursued the internal procedures, he was unfairly denied on that, and he got fired after he said he wanted, he thought he was going to formally arbitrate. And that was the retaliation. Well, he knew when he got the final warning, and it made plain to reconcile the question that you've asked Judge Lagoa, nothing in the disciplinary procedures precludes firing, even when that's going on. And I would direct the court to the statement of intent, which says that at will doesn't afford an employee any rights that they didn't already have. And in the handbook, reiterating the at will, it says that there is no guarantee that the employment will end under certain conditions. And the city doesn't have to follow the dispute resolution procedures to terminate an employee. And if you read all of those provisions in context, and they also exist in the dual employment agreement, which incorporates the principles of employment, the only contextually appropriate interpretation of the retaliation provision is that it is not a freestanding, separate, or conflicting agreement that would support a claim that is otherwise completely disclaimed by the party's promises that this was at will. And if the court has further questions, I'm more than happy to answer them. But if not, I would respectfully request that the court affirm Judge Ingar's order for the well reasons that are set forth in her order. Thank you for your time. Thank you. While counsel was arguing Judge Grant, I found the answer. The arbitrability is left to the arbitrators, is found at DE 13.1 at page 27 in the arbitration policy. I want to also reference page 23 of that same arbitration agreement, which I think rebuts much of what you just heard. This is part of the Citibank contract. It says Citibank is not required to follow the steps of the dispute resolution before taking disciplinary action of any kind, including termination. However, if you disagree with any such disciplinary action, believe that such action violated your legally protected rights, and wish to pursue the dispute, you must institute proceedings in accordance with the policy. The results of the arbitration process are final and binding on you and Citi. That's exactly what Mr. Girardi did. He said, my legally protected rights include a protection from retaliation, which is not only for filing an arbitration, which he had said he was going to do, but also appealing the dispute resolution in the handbook. That's also protected from retaliation. And also, his legally protected rights, as stated in the Liang case, or at least that's the interpretation question that was before the arbitrators. And this argument that wrongful termination doesn't exist as a legal claim has been rejected most clearly by the Fifth Circuit in the BNSF case. In this case, the contract said, we can terminate you at any time without cause. The arbitrator said, nonetheless, this is BNSF 2015 from the Fifth Circuit. Nonetheless, the arbitrator said, that breached a covenant of good faith and fair dealing and awarded damages. That was upheld, because it's not only what's in the written contract, which is what the court looked at, but all the bodies of law that may apply. Also, I want to, again, I think counsel acknowledged that we're in the world of was this interpretation or not. And I want to go to what the district court said, page 24 of the final order, DE 29. This is on the retaliation point. Deference is not warranted where the panel's interpretation directly contradicts the plain language of the employment arbitration agreement. In other words, the district court acknowledged that the panel interpreted the agreement, but didn't agree with it using a summary judgment standard. And again, I would say that if this were an issue to be argued, that just in the same way you can't fire based on race, whistleblower status, et cetera, if retaliation is prevented, you can't fire on that basis either. But nonetheless, you don't have to decide if it's right or wrong. It's still an interpretation, as the district court said. And so what we really have is a mere disagreement with an arbitrator's interpretation, which is not a basis for vacatur. The same thing happens on the Agron case, where the district court says, I understand there are three cases that say arbitrators always have the duty with FINRA brokers to determine whether or not there was just cause. But I don't agree with that, citing dictum and bishop. Again, that's just an error of law at worst. So unless the court has any questions. You know, since you're going to give me some of your time, is it true that you all had 17 arbitration sessions in this case? I believe that's correct. I understand. I start from the place that the two parties agreed to arbitration, and that's how this case is decided. But just as a member of the judiciary for 20 years, you know, I'd make a little commercial for the courts. I think we could have done this all more efficiently and less expensively. So thank you. And you know, having been on both sides of arbitrations, you know, the judge doesn't charge you for their time. So in many ways, we do prefer courts. But of course, it was Citibank that required arbitration. And we think there are. But you agreed to it. We did agree to it. And FINRA requires it also. So we would ask that the court, you know, applying a de novo standard of review, vacate, reverse the district court's order, and direct that the arbitration would be confirmed. Thank you. Thank you.